## Case No. 16,306.

### UNITED STATES v. SIXTY–FOUR BARRELS DISTILLED SPIRITS.

[3 Cliff. 308.] 1

Circuit Court, D. Massachusetts. Oct. Term, 1870.

FORFEITURES UNDER INTERNAL REVENUE LAWS—INNOCENT PURCHASERS — DISTILLED SPIRITS — DIVESTITURE OF TITLE—CONSTRUCTION OF STATUTES.

1. A purchaser of distilled spirits, ignorant at the time of the purchase that the spirits had been fraudulently removed from a bonded warehouse, or that the tax imposed thereon had not been paid, acquires his title only by such purchase, and if the property in the spirits claimed by the vendor had been absolutely forfeited to the United States before the sale, then the vendee can acquire no title; but where the verdict of the jury had established the fact of the innocence of the purchaser and claimant, the question is whether the goods had been forfeited to the United States before the contract of sale. The liability of the goods to forfeiture in such case must be deduced from the acts of the first owner and seller alone.

2. Forfeitures made absolute by statute relate back to the time of the commission of the wrongful acts prohibited by statute, and the title vests immediately in the government on the commission of the wrongful acts.

3. But where there is more than one remedy provided by statute, and the government has an election to proceed for the forfeiture or in some other way not involving a forfeiture, the title to the property does not vest in the United States prior to the seizure or performance of some act which amounts to such election.

4. Congress has the power to decide in what event a divestiture of title shall take place, and

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

where the act declares without any election of remedies that forfeiture shall take place upon the commission of the wrongful act, the court must carry the provision into effect, even against innocent purchasers, where the title is consummated by seizure, suit, judgment, and condemnation.

5. Where the language is doubtful, resort must be had to the ordinary rules of construction, and the rules of the common law applicable to the subject of forfeiture.

6. The title of the wrong-doer remains unaffected by his wrongful acts until suit, seizure, and judgment or decree, but where the act of congress so provides, and there is no election of remedies, the judgment or decree divests his title from the date of the wrongful acts.

7. Section 45 of the act of July 13, 1866 [14 Stat. 163], provides that "all distilled spirits found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed by law on the same not having been paid, shall be forfeited to the United States, or may immediately upon discovery be seized, and after the assessment of the tax thereon be sold by the collector for the tax and expenses of seizure and sale." Held, that under this statute the judgment or decree only relates back to the date of the seizure, and does not overreach the title of an innocent purchaser acquired subsequent to the date of the wrongful acts and before the seizure.

[Error to the district court of the United States for the district of Massachusetts.]

Provision is made by section 45 of the act of July 13, 1866, that "all distilled spirits found elsewhere than in a bonded warehouse, not having been removed from such warehouse according to law, and the tax imposed by law on the same not having been paid, shall be forfeited to the United States, or may immediately upon discovery be seized, and after the assessment of the tax thereon be sold by the collector for the tax and expenses of seizure and sale." 14. Stat. 163. Pursuant to that enactment, the libellant alleged, in the first count of the information, that the internal-revenue collector for the third collection district in this state on April 26, 1867, did, at Boston, in this judicial district, seize on land, as forfeited to the United States, sixty-four barrels of distilled spirits found on the 28th of April in the same year in a certain store and building therein described. And the libellant further alleged that the goods so seized were distilled spirits; that they had been manufactured in the United States since January 1, 1865; that an internal-revenue tax was, and since the goods were so manufactured had been, by law imposed on the same; that the goods so seized in the store and building aforesaid were found elsewhere than in a bonded warehouse; that they had not been removed from any bonded warehouse according to law; and that the tax so imposed by law on the same had not been paid, nor any part of the same, when the goods were so found and seized.

Two other counts were also contained in the information, founded on another provision enacted by congress (14 Stat. 111; 13 Stat. 240). This provision reads as follows:

That goods on which taxes are imposed by law if "found in the possession or custody or within the control of any person or persons for the purpose of being sold or removed by such person or persons in fraud of the internal-revenue laws, or with (the) design to avoid (the) payment of said taxes, may be seized by the collector, . . . and the same shall be forfeited to the United States." When the information was filed it contained four counts, but the fourth was discontinued, and a new one was filed in its place by leave of court, which was the fourth count in the series as at present numbered.

Omitting unimportant words, the last three counts alleged in substance and effect, that the goods in question were distilled spirits manufactured in the United States; that on the day and year aforesaid they were found by the said collector in the store and building aforesaid; that .the goods were then and there within the control of the claimant [John E. Cassidy] for the purpose then and there entertained by him, of being sold and removed in fraud of the internal-revenue laws of the United States, and with the design of avoiding the payment of the taxes imposed on the same, which then and there remained due and wholly unpaid.

Monition was duly issued and served, and the claimant appeared, and alleged, in due form, that he, at the time of the seizure, was and still was the lawful and sole owner and proprietor of the goods seized, of which he offered due proof. Two pleas were subsequently pleaded by the claimant: (1) That the goods in question did not, nor did any part thereof, become forfeited to the United States in manner and form as in said information was alleged. (2) That the sixty-four barrels of distilled spirits did not become forfeited, as alleged, because the same after their manufacture had been in a bonded warehouse, and that the same had been removed from that depository in due form of law; that after the same were so removed from the bonded warehouse, they were rectified and inspected by a government inspector, and were duly marked as required by law; and that the same were subsequently offered for sale in open market; and that he, without any knowledge, information, or belief that the same were not properly and rightfully so offered for sale, or that there was any tax due and unpaid to the United States upon the same, bought the said sixty-four barrels of distilled spirits and paid for the same their full, just, .and marketable value; all of which, as he alleged, he was ready to verify. Issue was joined upon the first plea, and to the second the libellant filed a general replication, affirming that all the allegations of the information were true, and tendering an issue which was duly joined by the claimant. Both pleas therefore terminated in issues of fact, and the jury under the instruction of the court returned a verdict for the claimant. [Case unreported.] Exceptions were tendered by the district attorney, and the same were duly allowed and sealed, and the questions examined and decided were those saved in the bill of exceptions, and brought into the 'court by the writ of error sued out by the United States.

Evidence was introduced tending to show that several hundred barrels of distilled spirits manufactured within the United States were deposited in certain bonded warehouses in the third internal-revenue collection district in this state; that a tax was imposed on the same under the internal-revenue laws of the United States which had not been paid; that the same were withdrawn from that depository upon application made in due form to the collector of that collection district, the applicants giving bonds in due form for the alleged purpose, in certain cases that the spirits were withdrawn for rectification, and in other cases that the spirits were withdrawn for the purpose of transportation to some port or place in another state, and for exportation from thence to some foreign country. None of the applications, however, were made by the claimant, nor did he execute any of the bonds or cause them to be executed, but the bonds were accepted by the collector, and he granted permits in due form, as in case of withdrawal for rectification or for transportation to another state. All of the bonds were false and fraudulent, and none of the spirits were ever returned as stipulated, nor were the same or any part thereof ever transported to another state or to any foreign country. On the contrary, the spirits were removed and sold for consumption within the United States, and barrels filled with water were attempted to be transported in their place, and all the spirits were consumed in this country without paying the taxes, in violation of the internal-revenue laws passed by congress. Such of the spirits as were in controversy in this case were found by the collector in the store and building described in the information. They were in the actual possession of other parties, but the bill of exceptions showed that they had been placed there by the direction of the claimant, were under his control, and were intended to be sold and removed, and that the building was neither a bonded warehouse nor a distillery. Some evidence was also introduced tending to show that the spirits in question were a portion of the spirits fraudulently withdrawn from the bonded warehouses as aforesaid, and that the claimant received the same from one of the persons who executed the false and fraudulent bonds, or procured them to be executed, and that the claimant not only knew that the spirits had been thus fraudulently removed from the public depositories, and that the taxes had not been paid thereon, but that he participated in the fraudulent acts by which the removal was effected, and .also in the fraudulent attempt to transport water instead of the spirits to another state, and that

he held the spirits in possession for the purpose of removal and sale. All such participation and knowledge were denied by the claimant, and he introduced evidence tending to show that he purchased the spirits innocently, and for value and in good faith, at their full market value, that he had no knowledge that the spirits had been fraudulently withdrawn from the bonded warehouses, or that the taxes had not been paid. Rebutting evidence was introduced by the libellant as to the market value of the spirits, and the bill of exceptions shows that the claimant admited that the price paid, the spirits being greatly above proof, was less per gallon than the tax imposed and unpaid.

Two instructions were given by the court to the jury at the request of the claimant, to which the district attorney excepted:— That if the spirits were removed from a bonded warehouse upon bonds in the form prescribed by law, then the facts that such bonds were signed by irresponsible parties, and that the same was known by the party who withdrew the spirits and intended to commit the fraud, do not render the spirits liable to forfeiture in the hands of an innocent purchaser. That if the spirits were fraudulently withdrawn as aforesaid, but in the form prescribed by law, and the claimant was not a participant in the fraud, and purchased the spirits in good faith without knowledge of the fraud, then he acquired a good title, and the spirits cannot be forfeited. Prayers for instructions were also presented by the district attorney in substance and effect as follows: That if the spirits were found elsewhere than in a bonded warehouse, and not in a distillery, and had been removed from such a depository upon permits authorizing the removal for rectification or for transportation, issued upon the execution of false and fraudulent bonds, in form such as were required by law, and if the tax imposed on the spirits had not been paid, then the spirits are subject to forfeiture under the first count, even though the claimant may have purchased the same innocently and without any participation or guilty knowledge of the fraudulent removal or that the tax had not been paid. That the spirits having been found as shown in the evidence, the burden is upon the claimant to satisfy the jury that the tax imposed by law on the same had been paid, and that if he fails so to do, the verdict on the first count must be for the United States. That if the claimant purchased the spirits at a less price than the tax as imposed by law, and if the spirits had actually been fraudulently removed from a bonded warehouse as aforesaid, and if the tax imposed by law thereon had not been paid, then the said spirits were subject to forfeiture under the first count in the information. That if the claimant purchased the spirits at less price than the tax imposed by law thereon, the fact of such purchase under such circumstances "must be in law taken" as notice that the spirits had not been removed from a bonded warehouse according to law, and that the tax imposed thereon had not been paid, if in fact the spirits had been fraudulently removed from such a depository as aforesaid, and if in fact the tax imposed by law on said spirits had not been paid.

The court refused to give the instructions as requested, and instructed the jury, among other things, in substance and effect as follows: That if the spirits were fraudulently removed from the bonded warehouse, as aforesaid, for the alleged purposes aforesaid, but were really withdrawn for sale and consumption, and if the tax imposed by law on such spirits had not been paid, the spirits would be liable to forfeiture under the first count in the hands of the person who committed the fraud, or of any person who aided in committing it or connived at it, or of any purchaser who held the spirits for sale and consumption, and who bought the same with actual knowledge of the fraud. Just exception, it was conceded, could not be taken to that part of the charge, but the court in the same connection instructed the jury that the spirits under the circumstances therein assumed would not be liable to forfeiture if in the hands of an innocent purchaser for value without notice. Certain instructions were also given by the court as to the burden of proof, but as those rulings were not the subject of complaint, the instructions are omitted. That the purchase of the spirits at a less price per gallon than the amount of the tax was not in itself a ground of forfeiture, nor was it in law to be taken absolutely as notice to the purchaser that the spirits had been illegally removed, and that the tax on them had not been paid; that the purchase in that state of the case was a circumstance of suspicion; and that such a circumstance was to be considered by the jury in connection with the other evidence in determining whether or not the claimant, as such purchaser, had actual knowledge of the fraud at the time he bought the spirits. Reference need not be made to the single instruction reported as given, applicable to the other counts, as it was conceded by the district attorney that the point intended to be raised by the exception was not open, as the jury found that the claimant purchased the spirits without knowledge of the fraud or that the tax imposed thereon had not been paid.

W. A. Field, Asst. U. S. Dist. Atty.

J. W. Richardson and M. W. Paine, for claimant.

CLIFFORD, Circuit Justice. Viewed as an innocent purchaser for value without notice that the spirits had been fraudulently removed from the bonded warehouse, or that the tax imposed thereon had not been paid,

as the claimant must be in this investigation, the single question presented for examination and decision is, whether the spirits under the circumstances disclosed in the bill of exceptions were liable to forfeiture at the time the same were seized by the internal-revenue collector for the third collection district. Whatever title to the spirits in controversy the claimant had at the time the same were seized, he acquired by purchase, and if the property in the spirits claimed by his vendor was absolutely forfeited to the United States before he purchased the same, then he acquired nothing by his bargain; but if the title of his vendor was valid at the time of the sale, then the spirits were not liable to forfeiture at the time of the seizure, as the verdict of the jury establishes the fact that the claimant is an innocent purchaser for value, without notice that the spirits had been fraudulently removed from the bonded warehouse, or that the tax imposed thereon had not been paid, as alleged in the information.

Examined in that point of view, as the case must be, it is apparent that the liability of the spirits to forfeiture in this case must be deduced, if at all, from the acts of the former owner and not from the acts of the claimant, as every charge against him is negatived by the verdict of the jury. "Distilled spirits found elsewhere than in a bonded warehouse not having been removed from such warehouse *according to law*, and the tax imposed by law on the same not having been paid, shall be forfeited." 14 Stat. 163. Had the provision stopped there, it is quite clear that the forfeiture would have been absolute, and that the spirits might be subsequently seized for that purpose, as well after the same had passed into the hands of an innocent purchaser as while the spirits remained in the hands of the perpetrator of the fraud. Forfeitures made absolute by statute relate back to the time of the commission of the wrongful acts which the statute prohibits. Where the forfeiture is absolute the title to the thing forfeited vests immediately in the government, but where more than one remedy is given, and the government has an election to proceed for the forfeiture or in some other way not involving a forfeiture, the title of the property does not vest in the United States prior to the seizure or the performance of some other equivalent act which amounts to such an election. U. S. v. Grundy, 3 Cranch [7 U. S.] 338; Roberts v. Wetherall, 1 Salk. 223; Gelston v. Hoyt, 3 Wheat. [16 U. S.] 246. Differences of opinion existed at one time among the justices of the supreme court, whether a forfeiture for the violation of the revenue laws ever gave such a title to the United States as to overreach a bona fide sale to an innocent purchaser when made before seizure and suit for condemnation, but the majority of the court adopted the affirmative of that proposition. U. S. v. Bags of Coffee,

8 Cranch [12 U. S.] 404; The Mars, Id. 417; Confiscation Cases, 7 Wall. [74 U. S.] 460. Congress possesses the power to decide in what event a divestiture of title in such a case shall take place, whether on the commission of the offence, the seizure, or the condemnation; and where the act of congress declares in terms without any qualification or election of remedies that that forfeiture shall take place upon the commission of the offence, it becomes the duty of the court to carry the provision into effect even as against innocent purchasers, in cases where the title is consummated by seizure, suit, and judgment, or decree of condemnation. Such is the settled rule of law where the forfeiture is made absolute upon the commission of the offence; but in all cases where the language employed by congress is doubtful, it is manifestly proper to resort to the ordinary rules of construction and to the rules of the common law applicable to the subject of forfeiture to assist the mind in coming to a conclusion. Forfeiture, it is said, in the former case, is absolute; but the remark should be received with some qualification, as the title only vests in the United States by relation back to the criminal offence in case where it is consummated by seizure, suit, and judgment or decree. Unless the matter is prosecuted and the title consummated, the act of congress becomes imperative, as the title of the wrong-doer remains unaffected by his wrongful acts until seizure, suit, and judgment or decree, but the effect of the judgment or decree is to divest his title from the date of the wrongful acts. U. S. v. Fifty-Six Barrels Whiskey [Case No. 15,095]; The Florenzo [Id. 4,886].

Grant all that as applied to the clause of the section declaring the forfeiture if it stood alone and without any qualification, but the same section contains an alternative clause, as appears by the next sentence, which provides as follows: "Or (such distilled spirits) may immediately upon discovery be seized, and after the assessment of the tax thereon may be sold by the collector for the tax and expenses of seizure and sale." Read together, as the two clauses must be, their true construction is as obvious as any enactment well can be which is expressed in clear and unambiguous language. Such spirits when found elsewhere than in a bonded warehouse, if the same have been illegally removed from such a public depository without the payment of the tax imposed by law on the same, may be seized as forfeited to the United States, or the proper officer of the revenue may seize the same under the immediately succeeding clause of the section, and in that event it becomes the duty of the assessor to assess the tax on the same imposed by law, and of the collector to sell the spirits for the tax and expenses of seizure and sale, as expressly provided by the closing paragraph of the sentence. Where the forfeiture is absolute, the entire title of the

wrong-doer, when the judgment or decree is rendered, vests in the United States from the date of the wrongful act; but if the forfeiture is made conditional, as, for example, if the United States may elect to proceed by information for a forfeiture or for some other redress not amounting to an absolute forfeiture of the spirits, then the judgment or decree only relates back to the date of the seizure, and does not overreach the title of an innocent purchaser acquired subsequent to the wrongful act of the seller and before the seizure of the spirits, if the purchase was bona fide for value and without notice of the wrongful acts of his vendor. Caldwell v. U. S., 8 How. [49 U. S.] 366; Confiscation Cases, 7 Wall. [74 U. S.] 460; U. S. v. Grundy, 3 Cranch [7 U. S.] 352; U. S. v. Morris, 10 Wheat. [23 U. S.] 290. Extended remarks to show that the United States in cases arising under the section on which the information in this case is founded, are quite unnecessary, as the express words of the second clause referred to are, that as an alternative remedy the spirits may immediately upon discovery be seized, and after assessment of the tax thereon may be sold, by the collector for the tax and the expenses of the seizure and sale.

Proceedings under that clause are instituted and prosecuted to enforce a lien created by an act of congress, and the very nature of the proceeding concedes that the title to the spirits seized is still in the wrong-doer, and it is as clear as anything well can be that he is entitled to what remains of the proceeds of the sale after deducting the tax, interest, and expenses, as there is no authority to sell the property for any other purpose. Evidently these considerations dispose of all the exceptions exhibited in the record except the one in the instruction given, which is applicable to the other counts, and in respect to that no further remarks are required, as it is conceded that the point is not open under the finding of the jury.

Judgment affirmed.